**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JULIA L.,[1]

        Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner, Soc. Sec. Admin., in
official capacity,

        Defendant.

Case No. 1:21-cv-00013-JMK

## DECISION AND ORDER

On or about May 2, 2016, Julia L. ("Plaintiff") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"),[2] respectively, alleging

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II and Title XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

disability beginning August 1, 2014.[3]  Plaintiff has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[4]  Plaintiff's opening brief asks the Court to vacate the Commissioner's decision and remand for a directed finding of disability and calculation of benefits, or, in the alternative, for further administrative proceedings.[5]  The Commissioner filed an Answer and a brief in opposition to Plaintiff's opening brief.[6]  Plaintiff filed a reply brief on December 13, 2021.[7]  Oral argument was not requested and was not necessary to the Court's decision.  On July 19, 2021, Defendant Commissioner Saul was substituted by Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d).[8]  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]  For the reasons set forth below, Plaintiff's request for relief is GRANTED IN PART.

---

[3] Administrative Record ("A.R.") 1279.  The application summaries, not the applications themselves, appear in the Court's record.  The application summary for Plaintiff's SSI claim lists May 2, 2016, as the application date and the DIB summary lists May 18, 2016.  A.R. 219, 229.  A protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits.  *See* 20 C.F.R. §§ 404.630, 416.340, 416.345.

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 15 (Plaintiff's Br.).

[6] Docket 13 (Answer); Docket 16 (Defendant's Br.).

[7] Docket 17 (Reply).

[8] Docket Annotation (July 19, 2021).

[9] 42 U.S.C. § 405(g).

# I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [the ALJ] did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the

---

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Richardson*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[18] This duty exists "even when the claimant is represented by counsel."[19]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured

---

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[20] 42 U.S.C. § 423(a).

status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is

defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining

disability within the meaning of the Act.[24]  A claimant bears the burden of proof at

steps one through four in order to make a prima facie showing of disability.[25]  If a

---

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. § 423(d)(1)(A).

[23] 42 U.S.C. § 423(d)(2)(A).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[28] *The ALJ determined that Plaintiff had not engaged in substantial activity since August 1, 2014, the alleged onset date.*[29]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30] *The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post L4/5 microdiscectomy; reactive airway disease; post-traumatic stress disorder (PTSD); and depression.*

---

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 1282.

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Case 1:21-cv-00013-JMK   Document 19   Filed 08/17/22   Page 6 of 31

*The ALJ determined that Plaintiff's degenerative disc disease of the cervical spine; uterine bleeding; and iron deficient anemia were non-severe impairments. The ALJ also concluded that Plaintiff's somatoform disorder and personality disorder were non-medically determinable impairments.*[31]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including

---

[31] A.R. 1282–83.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 1283.

impairments that are not severe.[34]   *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following exceptions: standing, walking, and sitting up to six hours in an eight-hour workday, with a sit and stand option at will (the claimant does not leave the work station); occasional climbing of ramps and stairs, stooping, balancing, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to irritants such as fumes, odors, gases, and poorly ventilated areas; and avoiding moderate exposure to hazardous machinery and unprotected heights. The ALJ further limited Plaintiff to work involving simple, routine, and repetitive tasks (tasks and routine can be learned within a month's time); not highly paced or assembly line-type work; and only occasional interaction with the general public.[35]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[36]  Otherwise, the evaluation process moves to the fifth

---

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[35] A.R. 1286.

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

and final step.  *The ALJ determined that Plaintiff was not capable of performing any past relevant work.*[37]

Step 5.  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[38]  *The ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including electronics assembler (DOT #729.687-010); entry electronics worker (DOT #726.687.010); and small parts assembler (DOT #739.687-030).*[39]

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 1, 2014, through the date of the ALJ's decision.[40]

---

[37] A.R. 1295.

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 1296.

[40] A.R. 1297.  The ALJ stated Plaintiff was not under a disability from August 1, 2014, through the date of the decision on April 28, 2021.  The ALJ then clarified:  (1) "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on May 2, 2016, the claimant is not disabled" and (2) "[b]ased on the application for supplemental security income filed on May 2, 2016, prior to October 28, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.  However, as of October 28, 2019, the claimant is disabled as referenced in the Appeals Council Remand Order."  A.R. 1297.  For purposes of DIB, Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018.  A.R. 1282.

## III. PROCEDURAL AND FACTUAL BACKGROUND

On May 2, 2016, Plaintiff protectively filed applications under Titles II and XVI. She was 48 years old as of August 1, 2014, the alleged onset date.[41] Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018.[42] On January 9, 2017, the Social Security Administration ("SSA") determined that Plaintiff was not disabled under the applicable rules.[43] On May 31, 2018, Plaintiff appeared and testified telephonically, with representation, before ALJ Cecilia LaCara.[44] On September 5, 2018, the ALJ issued an unfavorable ruling.[45] On June 24, 2019, the Appeals Council denied Plaintiff's request for review.[46] On October 28, 2019, Plaintiff filed new SSI and DIB applications. At the initial level, the SSA determined Plaintiff was disabled as of the date of Plaintiff's SSI application.[47] On February 12, 2020, this Court reversed and remanded Plaintiff's claims for the May 2, 2016, applications pursuant to the

---

[41] A.R. 219, 229.

[42] A.R. 1282.

[43] A.R. 129–30.

[44] A.R. 66–86.

[45] A.R. 19–33.

[46] A.R. 1394–98.

[47] On March 16, 2020, the SSA approved Plaintiff's SSI application and determined Plaintiff was disabled as of the SSI application date on October 28, 2019. The SSA did not approve Plaintiff's DIB application because Plaintiff's date last insured was September 30, 2018. A.R. 1446–47, 1466–85. The application summaries do not appear in the Court's record.

terms of stipulation agreed to by the Parties.[48]  On June 13, 2020, the Appeals Council affirmed the SSA's disability determination as of October 28, 2019, and remanded for further proceedings before an ALJ for the adjudication of the closed period from August 1, 2014, through October 27, 2019.[49]  On April 1, 2021, Plaintiff appeared and testified with representation before ALJ LaCara.[50]  The ALJ issued an unfavorable ruling on April 28, 2021.[51]  In her decision, the ALJ specified that she considered only the evidence of record from August 1, 2014, through October 27, 2019.[52]  On July 6, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[53]

## IV.  DISCUSSION

Plaintiff is represented by counsel in this appeal.  In her opening brief, Plaintiff alleges the ALJ erred:  (1) by failing to provide either clear and convincing

---

[48] Upon remand, the Parties agreed the Appeals Council would instruct the ALJ to offer Plaintiff the opportunity to submit additional evidence and arguments; further evaluate the opinion evidence as a whole, including the evidence previously denied that was submitted to the Appeals Council; reevaluate Plaintiff's severe impairments as a whole, but in particular her mental health impairments; reevaluate Plaintiff's symptoms; reevaluate the medical opinion evidence as a whole, but in particular the opinion of Dr. Bos; reevaluate Plaintiff's residual functional capacity; if warranted, obtain evidence from a medical expert to clarify the nature, severity, and effects of Plaintiff's impairments; seek supplemental vocational expert evidence, if necessary on whether Plaintiff can perform work with her assessed limitations; and if a fully favorable decision cannot be granted on the record, give Plaintiff an opportunity for a new hearing.  A.R. 1404–09.

[49] A.R. 1448–52.

[50] A.R. 1351–63.

[51] A.R. 1276–97.

[52] A.R. 1280.

[53] Docket 1.

or specific and legitimate reasons for discounting treating physician John Bursell, M.D.'s, medical opinion, and (2) by failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.[54] The Commissioner disputes Plaintiff's arguments and asks this Court to affirm the agency's determination.[55]

## A. Medical Opinion of Dr. John Bursell, M.D.

On October 25, 2016, Plaintiff's treating physician, Dr. John Bursell, M.D., completed a function report on Plaintiff's behalf. He opined that Plaintiff could walk, stand, and sit for one to two hours in an eight-hour workday; lift up to 10 pounds occasionally; never bend or climb; and never reach above shoulder level. Dr. Bursell also opined that Plaintiff's injury was expected to continue for three months and her prognosis was "good."[56]

On March 28, 2018, Dr. Bursell completed a second residual functional capacity form. Again, Dr. Bursell opined that Plaintiff was able to stand for one to two hours and sit for two hours in an eight-hour workday due to low back pain and lumbar radiculopathy. He opined that Plaintiff could frequently reach above the shoulders and down to waist level; rarely reach down towards the floor; and lift and carry five to 10 pounds in an eight-hour period. He opined that Plaintiff's claims of pain were credible due to her prior lumbar discectomy, and that based on his

---

[54] Docket 15 at 4–16.

[55] Docket 16 at 3–11.

[56] A.R. 1107–08.

Case 1:21-cv-00013-JMK   Document 19   Filed 08/17/22   Page 12 of 31

experience with Plaintiff, his diagnosis, and Plaintiff's impairments, Plaintiff was unable to continue or resume work. Dr. Bursell opined that Plaintiff's impairments had lasted for one year and Plaintiff's disability was not likely to change.[57]

Plaintiff applied for DIB and SSI benefits on or about May 2, 2016, so the regulations prior to March 27, 2017, apply to her claim.[58] "Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[59] For applications filed before March 27, 2017, medical opinions from treating physicians are given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the claimant's case record."[60] When a treating doctor's opinion is not controlling, it is evaluated pursuant to factors including: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion through relevant evidence; and (5) other

---

[57] A.R. 2208–13.

[58] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence. The revisions became effective on March 27, 2017. *See* 82 F.R. 5844, 5869 (1-18-2017).

[59] 20 C.F.R. §§ 404.1527(c), 416.927(c). These sections apply to claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.614, 416.325.

[60] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[61]

In the Ninth Circuit, when "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[62]  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings."[63]  An ALJ may reject the opinion of a doctor "if that opinion is brief, conclusory, and inadequately supported by clinical findings."[64]

The opinions of agency physician consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source.[65]  "The weight afforded a non-examining physician's testimony depends on the degree to which he provides supporting explanations for his opinions."[66]  Greater weight may also be given to the opinion of a non-examining expert who testifies at a hearing because he is subject to cross

---

[61] 20 C.F.R. §§ 404.1513a(b), 416.913a(b), 404.1527(c)(2), 416.927(c)(2).

[62] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[63] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[64] *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

[65] 20 C.F.R. §§ 404.1513a(b), 416.913a(b).

[66] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

examination.[67]  The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.[68]  Because Dr. Bursell was a treating physician and his October 2016 and March 2018 medical opinions were contradicted by testifying medical expert Wayne Kidder, M.D., the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Bursell's opinions.[69]

"When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision."[70]  At the same time, the court may not affirm an ALJ's decision where the ALJ "pick[ed] out a few isolated instances of improvement" to deny benefits to a claimant.[71]  Here, the ALJ discounted Dr. Bursell's opinions as "inconsistent with the overall objective evidence and the claimant's own subjective statements as to the success of her surgery."  In support of her conclusion, the ALJ first noted that Dr. Bursell's October 2016 opinion was limited to a three-month period.  Next, the ALJ concluded that Dr. Bursell's own examinations in August 2017 and March 2018 were "normal" because Plaintiff

---

[67] *Andrews v. Shalala*, 53 F.3d 1035, 1042 (citing *Torres v. Sec'y of H.H.S.*, 870 F.2d 742, 744 (1st Cir. 1989)).

[68] *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

[69] *See Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[70] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001).

[71] *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

exhibited "a normal gait, [Plaintiff] could walk on her heels and toes, squat and rise without using her hands, and her strength was normal." Additionally, the ALJ pointed out that in June 2017, Plaintiff "stipulated" that her microdiscectomy resolved her radiculopathy and that she was worried this would affect her ability to get disability. The ALJ also determined that Plaintiff's July 2018 MRI showed "only slightly worsening disc herniation from the L2-S1 vertebrae as compared to [Plaintiff's] pre-surgery MRI and the level of stenosis was not considered significant."[72]

The ALJ's first reason for rejecting Dr. Bursell's medical opinions is not supported by substantial evidence. While it is true that a short-term opinion regarding a claimant's impairments does not satisfy the durational requirement required for a finding of disability, the Court's review of the record supports Dr. Bursell's functional assessments taken together over the duration of the disability period.[73] For example, Plaintiff underwent multiple epidural steroid injections between 2016 and 2019 under the direction of Dr. Bursell for relief from low back pain and bilateral lumbar radiculopathy.[74] Before Plaintiff's L4-5

---

[72] A.R. 1289–90.

[73] *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming that a short-term excuse from work by a treating physician is not indicative of "claimant's long-term functioning"); *see also* 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A) (an impairment must last "for a continuous period of not less than 12 months").

[74] *E.g.,* A.R. 2131–36 (right L5-S1 transforaminal epidural steroid injections), A.R. 2127–30 (L5-S1 interlaminar epidural steroid injection), A.R. 2143 (L4-L5 epidural steroid injection follow up).

microdiscectomy in September 2016, Dr. Bursell noted that Plaintiff had not responded to conservative care and recommended spinal surgery.[75] In November 2016, eight weeks after surgery, Dr. Bursell observed that Plaintiff seemed to be in moderate pain with a slow and stooped gait.[76] At most visits between October 2017 and October 2019, Dr. Bursell observed that Plaintiff seemed in moderate pain upon physical examination and her gait was affected by a limp and slowed.[77]

A conflict between treatment notes and a treating physician's medical opinion is a specific and legitimate reason for discounting a treating physician's opinion.[78] But, in this case, Dr. Bursell's observations and diagnoses are not inconsistent with his medical opinions. For example, on August 8, 2017, Dr. Bursell observed that Plaintiff had a normal gait. However, at the same visit, Plaintiff reported to Dr. Bursell that she had been told at her post-operative follow up appointment that she would continue to have back pain for the rest of her life.[79] Although Dr. Bursell observed in March 2018 that Plaintiff could walk on her toes and heels, could squat and rise to standing without using her hands, and had

---

[75] A.R. 2158–59.

[76] A.R. 2154.

[77] *E.g.,* A.R. 2143–54.

[78] *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict between treatment notes and a treating physician's opinion is a specific and legitimate reason for rejecting the physician's opinion).

[79] A.R. 1131.

normal strength bilaterally, Dr. Bursell observed a positive bilateral straight leg raise a slowed gait affected by a limp at the same visit.[80] And, as stated above, at most follow up appointments, Dr. Bursell observed that Plaintiff was in moderate pain and had a slowed gait affected by a limp.[81]

The ALJ's third reason, that Dr. Bursell's medical opinion conflicted with Plaintiff's own subjective statements, was also not specific, legitimate, or supported by substantial evidence in this case. In support, the ALJ referenced the following medical record multiple times. In June 2017, Plaintiff saw Brett Walker, D.O., for follow up after her September 2016 back surgery. Dr. Walker stated Plaintiff "admits that [her right L4-5 microdiscectomy in September 2016] had alleviated her radiculopathy" and was concerned her ability to get social security disability benefits would be compromised. However, in the same record, Dr. Walker noted Plaintiff continued to have chronic, diffuse back pain.[82]

Importantly, the resolution of Plaintiff's radiculopathy[83] does not necessarily mean that Plaintiff's other severe impairments did not continue to have a significant

---

[80] In her April 2021 decision, the ALJ stated that Plaintiff exhibited a normal gait at the March 2018 visit with Dr. Bursell. A.R. 1289. The treatment record from March 28, 2018, actually states that Plaintiff's gait was "affected by a limp and slowed." A.R. 1132.

[81] *E.g.,* A.R. 2143–54.

[82] A.R. 1271–72.

[83] "Symptoms of radiculopathy vary by location but frequently include pain, weakness, numbness and tingling." John Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last viewed July 12, 2022).

impact on her daily functioning.  For example, Dr. Bursell continued to treat Plaintiff for back pain after June 2017.[84]  Additionally, Plaintiff's testimony that she would be able to sit for an hour before stretching and walking and be able to stand one to two hours a day is not in conflict with Dr. Bursell's opinion that Plaintiff was capable of standing for one to two hours and sitting for two hours in an eight-hour workday.[85]  Moreover, the ALJ's lay interpretation of Plaintiff's 2018 MRI was not a specific and legitimate reason for discounting Dr. Bursell's functional assessments.[86]

In sum, the ALJ's reasons for rejecting Dr. Bursell's medical opinions are not specific, legitimate, or supported by substantial evidence.

**B.    Plaintiff's Subjective Complaints**

In her function report from August 2015, Plaintiff stated that she experienced "[c]onstant pain to walk and stand."  She reported being able to wash dishes, do daily chores, cook dinner, grocery shop, and take her laundry to a laundromat, but also reported that she was unable to lift heavy loads of clothes or clean her apartment.  Plaintiff reported that she could lift up to 20 pounds and walk one block

---

[84] *E.g.,* A.R. 1132–34, 1136.

[85] *See* A.R. 75–76, 79, 1107, 1360, 2209.

[86] A.R. 1290.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (holding the ALJ erred by rejecting physicians' opinions and rendering his own medical opinion); *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms").

before needing to rest 20 to 30 minutes. She reported that she used a cane prescribed by a doctor.[87]

In August 2016, Plaintiff completed an additional function report. She reported experiencing pain on a daily basis and that she was unable to adequately manage her pain with medications. She reported problems with her personal care due to difficulty standing on her right leg, balance issues, and problems lifting, sitting, standing, or walking for very long. She reported she could perform some household chores, including washing dishes, vacuuming, and cleaning the bathroom, but that these chores took two hours each with many breaks. She reported that she could shop for groceries and use public transportation, but also reported that she struggled with carrying grocery bags and walking at the store. She stated she could walk one block before needing a rest.[88]

On May 31, 2018, Plaintiff testified regarding her physical impairments.[89] She testified again after remand, on April 1, 2021.[90] At the May 2018 hearing, Plaintiff stated she was in constant pain and struggled with everyday living and

---

[87] A.R. 272–80.

[88] A.R. 307–16.

[89] A.R. 66–86.

[90] At the outset, the ALJ noted she was limiting the hearing to additional evidence regarding Plaintiff's mental health issues. A.R. 1332. However, the psychological expert at the 2021 hearing opined that he thought Plaintiff's major limitation may be physical and Plaintiff's attorney specifically requested that the ALJ take into account the evidence regarding Plaintiff's physical impairments. A.R. 1342–49.

with sleeping. She testified she could sit for an hour before having to get up to stretch and walk with a cane. She reported having severe leg cramps at night and difficulty bending, crouching, crawling, and climbing stairs. Upon questioning by her attorney, Plaintiff testified that she thought she could stand up to two hours a day for five days a week. She testified that she had been prescribed a cane. Plaintiff also testified that when she was working, she missed one to two days each month for medical issues.[91]

At the April 2021 hearing, upon questioning by her attorney, Plaintiff testified that she would not be able to do her past work due to chronic pain and that she could stand with a cane for about an hour. She testified that she could not sit down for an eight-hour workday due to constant aching. Plaintiff testified that she had recently walked for two hours, but she had leg spasms all night afterward.[92]

The ALJ's assessment of a claimant's reported [or subjective] symptoms has two steps.[93] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[94] In the first step, the claimant need not "show that her impairment could reasonably be expected to

---

[91] A.R. 75–76, 79–82, 84–86.

[92] A.R. 1359–63.

[93] *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017).

[94] *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).

cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[95]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.[96] This standard is "the most demanding required in Social Security cases."[97]

Here, the ALJ determined Plaintiff's impairments reasonably could be expected to cause some of the alleged symptoms Plaintiff described. The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with the medical evidence and other evidence in the record.[98] Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, the ALJ was required to

---

[95] *Garrison,* 759 F.3d at 1014–15 (internal citations and quotations omitted).

[96] *Id*.

[97] *Trevizo,* 871 F.3d at 678 (quoting *Garrison,* 759 F.3d at 1014–15*)*.

[98] A.R. 1294.

provide specific, clear, and convincing reasons for rejecting Plaintiff's pain and symptom testimony.[99]

The ALJ provided the following reasons: (1) Plaintiff's complaints of disabling back pain were "out of proportion" to the physical findings in the record; and (2) Plaintiff's daily activities were "also inconsistent with an individual whose symptoms are unremitting and wholly unresponsive to treatment."[100]

While consistency with the record is an important factor in the ALJ's analysis of Plaintiff's symptom testimony, the ALJ "may not discredit [Plaintiff's] subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."[101] Although the ALJ summarized the treatment notes in the decision, the ALJ never made a specific link between Plaintiff's testimony regarding the limitations she experienced standing, walking, and sitting due to back

---

[99] The Commissioner states in briefing that she "continues to assert that the 'clear and convincing reasons' standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g), as well as agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings." Docket 16 at 3 n.1. The Commissioner also asserts that Plaintiff's testimony was "unreliable" even under the clear and convincing standard. *Id.* However, the Ninth Circuit has repeatedly reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See, e.g., Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014) (rejecting the government's argument that the ALJ must only provide "specific reasons and that 'clear and convincing' reasons are not required.") (emphasis in original); *Smith v. Kijakazi,* 14 F.4th 1108, 1112 (9th Cir. 2021) (explaining that the ALJ must specify which testimony is not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination); *Thomson v. Kijakazi*, No. 21-35152, 2022 WL 1239464, at *1 (9th Cir. Apr. 27, 2022) (finding the ALJ committed reversible error by failing to provide clear and convincing reasons for discrediting Thomson's testimony).

[100] A.R. 1295.

[101] *Coleman v. Saul,* 979 F.3d 751, 756 (9th Cir. 2020).

Case 1:21-cv-00013-JMK   Document 19   Filed 08/17/22   Page 23 of 31

pain and the medical records.[102]   Instead, the ALJ concluded Plaintiff had "a repeated pattern of symptom magnification in contradiction to the physical findings throughout the record."[103]

In support, the ALJ primarily cited records from 2013 through 2015.  First, the ALJ cited a physical therapy record from July 2013 with physical therapist Jeffrey Fultz.  PT Fultz noted that Plaintiff "was moaning and crying out loudly" during therapy without palpatory contact, but that the behaviors diminished during the therapy session.  The therapist also noted that MRI evidence of marked impingement on the L4 nerve matched some of Plaintiff's symptoms, but also that Plaintiff's reported symptoms "would cover a number of levels of [lumbosacral] nerve root involvement."[104]   The ALJ next cited to records from November and December 2014.  In November 2014, David Ogilbee, PT, opined that there was "a great deal of psychological component to [Plaintiff's] complaints and pain."[105]   In December 2014, PT Fultz noted that Plaintiff displayed symptom magnification behaviors.[106]   The ALJ cited another physical therapy record by PT Fultz from

---

[102] *See Lambert v. Saul,* 980 F. 3d 1266, 1277–78 (9th Cir. 2020) (citing *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015)) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible")).

[103] A.R. 1295.

[104] A.R. 406–07.

[105] A.R. 535–36.

[106] A.R. 570–71.

March 2015. In it, PT Fultz assessed Plaintiff with symptom magnification behaviors and myofascial pain syndrome. He recommended a behavioral health referral.[107] As noted above, in multiple sections of the decision, the ALJ referred to Dr. Walker's June 2017 notation that Plaintiff expressed concern about her ability to secure disability.[108] In briefing, the Commissioner points to additional records, including a record from November 2015 by PT Fultz noting that Plaintiff yelled at him and "was crying periodically through my attempts to complete an evaluation and to provide[ ] honest feedback on my findings." PT Fultz opined that Plaintiff was "able to return to work in an administrative/clerical capacity at this time."[109]

Plaintiff asserts that the treatment notes cited by the ALJ were from years before she filed her claim in May 2016 and as a result, cannot show an exaggeration of symptoms to obtain benefits in connection with her 2016 disability application.[110] She also asserts that the ALJ "offered no explanation why [the ALJ] was rejecting evidence of a psychological component to Plaintiff's pain complaints" and that the ALJ made selective findings supportive of the ALJ's conclusions.[111]

---

[107] A.R. 613.

[108] A.R. 1271–72.

[109] A.R. 948–49.

[110] Without discussing Plaintiff's earlier applications, the Court notes the record contains documentation of at least one prior application filed by Plaintiff on or about December 30, 2014, and denied on September 21, 2015. A.R. 104.

[111] Docket 17 at 4–5.

Although symptom magnification and secondary gain may be considered, the ALJ must identify specific, clear, and convincing evidence of improper secondary gain.[112] In this case, the record as a whole does not support a finding of improper secondary gain. For example, the records cited to by the ALJ largely reflect the opinion of one physical therapist during treatment primarily occurring before Plaintiff's 2016 application. Moreover, the therapist did not opine that Plaintiff was malingering, instead, he recommended behavioral therapy for Plaintiff's psychological symptoms associated with her pain complaints and sedentary work.[113]

Although there is some evidence that Plaintiff's back pain complaints were "out of proportion" to physical findings, the record also shows Plaintiff received multiple injections, underwent neurological testing and MRIs, and underwent surgery to diagnose and relieve her back pain.[114] And, despite treatment providers linking Plaintiff's physical pain with a mental component, the ALJ isolated Plaintiff's physical impairments in her decision. The ALJ then concluded Plaintiff's

---

[112] *Burrell v. Colvin,* 775 F.3d 1133, 1139–40 (9th Cir. 2014) (finding that treating physician's suggestion that "*perhaps* there was an issue of *secondary gain*" without other reasons supported by substantial evidence was insufficient to meet the specific, clear, and convincing standard) (emphasis in original).

[113] A.R. 613.

[114] *E.g.,* A.R. 391–92, 797–98, 806–08, 810, 812, 816, 818–20, 1048–50, 1803, 1805, 2127, 2129, 2154.

somatoform disorder[115] and personality disorder were non-medically determinable impairments, but she used evidence of a psychological component to Plaintiff's pain to discredit Plaintiff's symptom testimony and reports.[116] The Court is not confident the ALJ considered and accounted fully for the possibility that the discrepancy between the objective evidence and Plaintiff's pain was evidence of a psychological impairment, as opposed to evidence of exaggeration for improper secondary gain. Therefore, the ALJ's conclusion that Plaintiff's pain was out of proportion with the physical findings in the record is not a specific, clear, and convincing reason to discredit Plaintiff's symptom complaints in this case.

The ALJ also found Plaintiff's daily activities inconsistent with "an individual whose symptoms are unremitting and wholly unresponsive to treatment."[117] In support, the ALJ noted a treatment record in which Plaintiff reported being able to shop for four hours during the holidays. However, the same record also noted that Plaintiff reported the shopping trip "did cause increased pain at the end of that

---

[115] Somatic symptom and related disorders are "characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." *See* 20 C.F.R. § 404, Subpt. P. App. 1, § 12.07.

[116] A.R. 1283, 1294–95. *See Lester v. Chater,* 81 F.3d 821, 829–30 (9th Cir. 1995) ("Given that the consequences of Lester's physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments *taken together* result in limitations equal in severity to those specified by the listings.") (emphasis in original).

[117] A.R. 1295.

Case 1:21-cv-00013-JMK   Document 19   Filed 08/17/22   Page 27 of 31

time."[118]   Next, the ALJ discredited Plaintiff's subjective complaints based on Plaintiff's reported ability to do dishes, vacuum, go grocery shopping, use public transportation, and clean toilets and tubs.[119]   However, the ALJ did not mention that Plaintiff indicated each chore took her two hours to complete with many breaks or that Plaintiff reported struggling with carrying grocery bags and walking in the store.   In that same function report, Plaintiff also stated she could not sleep because of pain, rested a lot due to pain, and dealt with pain daily.[120]   And, although the ALJ pointed to treatment records recommending physical activity and walking, most of these records did not specify the amount of time Plaintiff should be spending on physical activity.[121]   In the records that did specify a level of activity, the recommended activity did not conflict with Plaintiff's testimony and reports regarding her limitations to sitting, walking, and standing.[122]   Plaintiff's minimal activities with qualifications and treatment records recommending physical activity

---

[118] A.R. 586.

[119] A.R. 1295.

[120] A.R. 308–16.   The Ninth Circuit has rejected an ALJ's findings when the ALJ "omitted highly relevant qualifications" to a statement indicating the claimant was independent in her daily activities.   *See Revels v. Berryhill,* 874 F.3d 648, 664 (9th Cir. 2017).

[121] *E.g.,* A.R. 570, 587, 596, 1197.

[122] In a record from July 2015, PT Fultz specified Plaintiff should stay active with walking for 30 minutes a day in 10-minute increments.   A.R. 581.   As pointed out by Plaintiff, PT Fultz's recommendation was not in conflict with Plaintiff's testimony that she could walk up to one hour and stand up to two hours a day.   *See* Docket 15 at 15; A.R. 76, 79.

within Plaintiff's stated abilities are not sufficient to support the ALJ's discounting of Plaintiff's symptom complaints.

In conclusion, the ALJ erred in rejecting Plaintiff's symptom testimony.

## C.    Scope of Remand

Plaintiff argues that remanding for a calculation of benefits is appropriate in this case.  She asserts that, in the alternative, the matter should be remanded for further proceedings.[123]  To determine which type of remand is appropriate, a court follows a three-step analysis.[124]  Under the credit-as-true rule, in order to remand for payment of benefits, a court must conclude:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[125]  However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious

---

[123] Docket 15 at 16–18.

[124] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[125] *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017).

Case 1:21-cv-00013-JMK    Document 19    Filed 08/17/22    Page 29 of 31

doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[126]

In this case, the first two requirements under the credit-as-true rule have been met. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Bursell's medical opinion and Plaintiff's symptom complaints, and the medical record for the adjudicatory period from August 1, 2014, through October 27, 2019, is complete. However, even if Dr. Bursell's medical opinion and Plaintiff's symptom testimony were credited as true, the evidence would not dictate a finding of disability for the entire closed period. Therefore, the proper remedy is reversal and remand for further administrative proceedings.

On remand, the ALJ should bifurcate the disability period from August 1, 2014, the alleged onset date, through May 2, 2016, the application date, and the period from May 2, 2016, through October 28, 2019, the date the SSA determined Plaintiff was disabled.[127] The treatment records documenting symptom magnification and a psychological component to Plaintiff's pain, primarily from the period prior to Plaintiff's May 2016 application, may or may not require a finding of disability from August 1, 2014 through May 2, 2016. Moreover, Dr. Bursell's medical opinions primarily cover the period after Plaintiff's May 2016 application. However, as part of the ALJ's re-evaluation of the evidence, including Plaintiff's

---

[126] *Brown-Hunter v. Colvin,* 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison,* 759 F.3d at 1021).

[127] A.R. 219, 229, 1447.

symptom testimony and Dr. Bursell's medical opinions, the ALJ should be instructed to evaluate the psychological component of Plaintiff's pain complaints, obtaining additional expert opinions as necessary.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 15 is GRANTED in part and this matter is REMANDED for further proceedings consistent with this Decision and Order.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 17th day of August, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE